# UNITED STATES DISTRICT COURT

for the

## Eastern District of Michigan

| | | |
|---|---|---|
| **BEVERLY BIGGS-LEAVY** <br> *Plaintiff,* | ) <br> ) <br> ) <br> ) | Case No._____ |
| **-v-** | ) <br> ) | |
| **LASHAWN JOHNSON**, in her individual and campaign capacity, **ROYTREAL KEITH-DEQUANTYE JOHNSON**, **GENESEE COUNTY BOARD OF CANVASSERS, FLINT CITY CLERK**, in her official capacity, **GENESEE COUNTY CLERK**, in her official capacity, **CITY OF FLINT, MICHIGAN SECRETARY OF STATE JOCELYN BENSON**, in her official capacity, and **JOHN DOES 1-10** in their individual capacity. <br> *Defendants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **COMPLAINT** |

## CIVIL ACTION

*This action alleges, inter alia, violations of the Voting Rights Act of 1965, Michigan Election Law, and the Equal Protection Clause of the Fourteenth Amendment, arising from systemic irregularities and unlawful conduct during the August 5, 2025, general election. Specifically, Plaintiff challenges the widespread mishandling and unauthorized delivery of absentee ballots in violation of MCL 168.764a, which strictly limits who may possess and submit a voter's absentee ballot, and MCL 168.765a, which governs the procedures for absentee ballot issuance, return, and verification. Plaintiff further alleges that these violations resulted in the dilution of lawful votes and the distortion of the electoral outcome, thereby denying voters a fair and transparent election. Plaintiff seeks declaratory and injunctive relief to prevent the certification of an unlawful result, compel compliance with state and federal law, and safeguard the integrity of future elections.*

## INTRODUCTION

1.   This action arises from widespread misconduct involving absentee ballots during the August 5, 2025, Flint City Council election in the 3rd Ward.

2.   Plaintiff seeks declaratory and injunctive relief to prevent certification of election results tainted by unauthorized ballot handling, vote dilution, and violations of federal and state election law.

3.   The misconduct described herein undermines the integrity of the electoral process and violates Plaintiff's rights under the U.S. Constitution, the Voting Rights Act, and 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

6.   This is an action for damages against the Defendants, who at all times, were acting under color of State law, and in vindication of Plaintiff's civil rights secured by 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Michigan Open Meetings Act, MCLS § 15.261, et seq., and the First Amendment to the United States Constitution.

7.   This Court has original subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 & 1343.

8.   This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related to the claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

9.   Venue is proper in this district pursuant to 28 U.S.C. 1391(b) as, upon information and belief, all Defendants reside in this district and the events giving rise to Plaintiff's claims as complained of herein occurred within this district.

**PARTIES**

10. At all times relevant hereto, Plaintiff BEVERLY BIGGS-LEAVY, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with a residential address believed to be 744 E. Philadelphia Blvd., Flint, Michigan 48505.

11. At all times relevant hereto, Defendant LASHAWN JOHNSON is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an address for service of process believed to be 1101 S. Saginaw Street, Flint, Michigan, 48502. Said Defendant is sued in both her individual and campaign capacity.

12. At all times relevant hereto, Defendant ROYTREAL KEITH-DEQUANTYE JOHNSON is, upon information and belief, the son of LaShawn Johnson and an adult resident citizen of the County of Genesee, State of Michigan, with an address for service of process believed to be 1101 S. Saginaw Street, Flint, Michigan, 48502. Said Defendant is sued in his individual and campaign capacity.

13. At all times relevant hereto, Defendant GENESEE COUNTY BOARD OF CANVASSERS is a public body organized under the laws of the State of Michigan and operating within Genesee County. Its official address for service of process is believed to be 1101 Beach Street, Room 101, Flint, Michigan, 48502. Said Defendant is sued in its official capacity.

14. At all times relevant hereto, Defendant FLINT CITY CLERK is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an official address for service of process believed to be 1101 S. Saginaw Street, Suite 201C, Flint, Michigan, 48502. Said Defendant is sued in her official capacity.

15. At all times relevant hereto, Defendant GENESEE COUNTY CLERK is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an official

address for service of process believed to be 324 S. Saginaw Street, Flint, Michigan, 48502. Said Defendant is sued in her official capacity.

16. At all times relevant hereto, Defendant CITY OF FLINT is a municipal corporation organized under the laws of the State of Michigan, with an official address for service of process believed to be 1101 S. Saginaw Street, Flint, Michigan, 48502. Said Defendant is sued in its official capacity.

17. At all times relevant hereto, Defendant JOCELYN BENSON, the Michigan Secretary of State, is, upon information and belief, an adult resident citizen of the State of Michigan, with an official address for service of process believed to be 430 W. Allegan Street, Lansing, Michigan, 48918. Said Defendant is sued in her official capacity.

18. At all times relevant hereto, Defendants JOHN DOES 1–10 are individuals whose identities are presently unknown to Plaintiff but who, upon information and belief, are adult resident citizens of the County of Genesee, State of Michigan. These Defendants include family members, friends, agents, or other associates of Defendant LASHAWN JOHNSON who participated in, facilitated, or aided the unlawful delivery, handling, or submission of absentee ballots in violation of Michigan election law. These Defendants are sued in their individual capacities. Plaintiff will amend this Complaint to substitute the true names of said Defendants when they are ascertained.

19. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

20. At all times material hereto, each defendant acted individually and/or through their respective agents, servants, workmen, and employees.

## FACTUAL BACKGROUND

21. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

22. On August 5, 2025, a special election was held to fill the vacant Flint City Council seat in the 3rd Ward.

23. Plaintiff Beverly Biggs-Leavy received one of the highest numbers of votes in the May 6, 2025, primary and appeared on the general election ballot.

24. Defendant LaShawn Johnson, who lost in the primary, ran as a write-in candidate.

25. Plaintiff was a certified candidate in the August 5, 2025, general election for City Council having lawfully qualified through the May 6, 2025, primary, where Plaintiff received 165 votes, tying for first place among declared candidates. Defendant Johnson placed third in that primary with only 162 votes and did not qualify for the general election ballot.

26. On information and belief, the surge in write-in votes for Defendant Johnson was driven by widespread absentee ballot irregularities, including unauthorized ballot collection, unlawful delivery, and systemic failures in chain-of-custody procedures.

27. Upon information and belief, Defendant Roytreal Keith-Dequanye Johnson personally visited multiple absentee voters in the 3rd Ward and falsely informed them that Defendant LaShawn Johnson was the only candidate running in the August 5, 2025, general election. These misrepresentations were made in an effort to induce voters to sign absentee ballot envelopes and permit Roytreal Johnson or affiliated individuals to complete and submit ballots on their behalf.

28. Upon information and belief, Witness, Defendant LaShawn Johnson was physically present during many of these encounters, often waiting in a nearby vehicle while Roytreal Johnson approached voters' homes.

29. These actions were overseen, encouraged, or directed by Defendant LaShawn Johnson, who coordinated with Roytreal Johnson and other affiliated individuals to facilitate the unlawful collection, completion, and submission of absentee ballots. This conduct reflects a deliberate and organized effort to manipulate absentee voting procedures in violation of Michigan Election Law and federal voting protections.

30. Voters were misled about the status of the election and deprived of accurate information necessary to make informed choices. In many cases, voters were not given the opportunity to review or verify the contents of the ballots submitted in their names. These actions materially contributed to the dilution of lawful votes and the distortion of the electoral outcome.

31. Michigan Election Law, specifically MCL 168.764a, prohibits any person other than the voter, a family member, or a designated election official from possessing or delivering a completed absentee ballot. MCL 168.765a further requires strict procedures for absentee ballot issuance, return, and verification, including deadlines and documentation protocols.

32. Plaintiff has obtained credible evidence, including an affidavit, indicating that third-party actors engaged in unlawful absentee ballot harvesting. Ballots were collected from voters without proper authorization and submitted in bulk to drop boxes and clerk offices in violation of Michigan law.

33. Election officials failed to enforce statutory safeguards, allowing unlawfully handled ballots to be counted and included in the unofficial results. These failures materially distorted the outcome of the election and undermined the integrity of the process.

34. The volume and geographic concentration of absentee ballots submitted in violation of MCL 168.764a and 168.765a strongly suggest coordinated misconduct. In precincts with elevated absentee ballot activity, write-in votes for Defendant Johnson surged disproportionately, despite her lack of ballot access and minimal public campaigning.

35. Plaintiff and similarly situated voters were harmed by these violations, as their lawful votes were diluted, and the electoral process was compromised. The irregularities described herein cast doubt on the validity of the election and warrant judicial intervention to prevent certification of an unlawful result.

36. Attached is an affidavit form a registered voter that Johnson or individuals affiliated with her campaign:

    a. Visited voters at their homes,

    b. Had voters sign absentee ballot envelopes,

    c. Completed the ballots themselves, and

    d. Mailed or submitted the ballots in violation of Michigan Election Law (MCL 168.764a and MCL 168.765a).

37. These individuals were not authorized under Michigan law to handle or return absentee ballots.

38. Voters were not given the opportunity to review or verify the contents of their ballots before submission.

39. The Genesee County Clerk has acknowledged that the majority of write-in votes were likely cast for Johnson.

40. The Michigan Secretary of State has referred the matter to the Office of Investigative Services.

41. The Genesee County Board of Canvassers is scheduled to certify the election results within 14 days of the election.

42. Plaintiff brings this action to vindicate the rights of voters, enforce compliance with Michigan and federal election law, and ensure that future elections are conducted with transparency, fairness, and integrity.

## COUNT I
## Violation of Equal Protection (U.S. Const. amend. XIV; 42 U.S.C. § 1983)

43. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

44. The Equal Protection Clause of the Fourteenth Amendment guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

45. In the context of elections, this protection extends to the right of each qualified voter to have their vote counted equally and not diluted by unlawful or fraudulent practices.

46. Defendant Johnson and/or individuals affiliated with her campaign engaged in a coordinated effort to collect, complete, and submit absentee ballots in violation of Michigan Election Law, specifically MCL 168.764a and MCL 168.765a.

47. Defendant Roytreal Johnson, acting in concert with Defendant LaShawn Johnson, personally visited voters and falsely informed them that LaShawn Johnson was the only candidate on the ballot. These misrepresentations were designed to induce voters to surrender control of their absentee ballots.

48. On information and belief, these actions were overseen, encouraged, or directed by Defendant LaShawn Johnson, who was present during many of these encounters and coordinated the unlawful ballot collection effort.

49. This conduct constitutes intentional voter deception and ballot harvesting, which diluted the weight of lawfully cast ballots and violated Plaintiff's right to equal protection under the Fourteenth Amendment.

50. These individuals were not authorized absentee ballot deliverers under Michigan law, and their actions resulted in the submission of ballots that were not completed or verified by the voters themselves.

51. An affidavit submitted by a voter confirms that they were approached at home, asked to sign absentee ballot envelopes, and did not complete or review the ballots that were submitted on their behalf.

52. This conduct constitutes ballot harvesting and voter substitution, which undermines the integrity of the electoral process and violates the principle of one person, one vote.

53. The unlawful submission of absentee ballots by unauthorized individuals diluted the weight of lawfully cast ballots, including those cast for Plaintiff, and distorted the outcome of the election.

54. The Genesee County Clerk has acknowledged that the majority of write-in votes were likely cast for Defendant Johnson, further amplifying the impact of the misconduct.

55. It is statistically anomalous and electorally suspect that Defendant Johnson, who placed third in the May 6, 2025, primary election with only 162 votes—behind both Plaintiff and another candidate who each received 165 votes—would receive a significantly higher number of write-in votes in the August 5, 2025 general election. This dramatic reversal, absent any documented surge in campaign activity or public support, raises serious questions about the legitimacy of the write-in ballots and supports the inference that unlawful absentee ballot practices materially affected the outcome.

56. The Genesee County Board of Canvassers is poised to certify the election results despite credible evidence of systemic absentee ballot violations.

57. Plaintiff, as a candidate and registered voter in the 3rd Ward, has suffered direct and particularized harm due to the dilution of lawful votes and the unequal treatment of voters.

58. The actions of Defendant Johnson and her affiliates, and the failure of election officials to prevent or remedy these violations, constitute a deprivation of Plaintiff's rights under the Equal Protection Clause, actionable under 42 U.S.C. § 1983.

59. The submission of unauthorized absentee ballots diluted the weight of lawful votes, violating Plaintiff's right to equal protection.

60. Defendants Flint City Clerk, Genesee County Clerk, Genesee County Board of Canvassers, City of Flint, and Michigan Secretary of State Jocelyn Benson, acting under color of state law, failed to enforce statutory safeguards governing absentee ballot handling, verification, and chain-of-custody.

61. These failures enabled the submission and counting of unlawfully handled ballots, resulting in the dilution of lawful votes and unequal treatment of voters.

62. Their omissions constitute deliberate indifference to Plaintiff's constitutional rights and materially contributed to the deprivation of equal protection under the Fourteenth Amendment.

## COUNT II
### Violation of the Voting Rights Act (52 U.S.C. § 10307(b))

63. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

64. Section 2 of the Voting Rights Act prohibits any voting practice or procedure that results in the denial or abridgment of the right to vote on account of race, color, or membership in a

language minority group. Section 11(b) further prohibits intimidation, threats, or coercion directed at voters or those aiding others in voting.

65. Defendants engaged in conduct that violated the Voting Rights Act by orchestrating, facilitating, or failing to prevent widespread absentee ballot irregularities, including the unauthorized collection, alteration, and submission of ballots in a manner that diluted lawful votes and undermined the integrity of the electoral process.

66. On information and belief, voters were subjected to undue influence, misinformation, or coercion regarding the submission of absentee ballots, particularly in precincts with high concentrations of minority voters. These practices had the effect of suppressing or distorting the true electoral will of the community.

67. Defendant Roytreal Johnson misled voters by falsely stating that Defendant LaShawn Johnson was the only candidate in the election, thereby suppressing informed voter choice and distorting the electoral process.

68. These actions were part of a coordinated effort overseen, encouraged, or directed by Defendant LaShawn Johnson, who was physically present during many of these interactions and facilitated the unlawful absentee ballot scheme.

69. The deceptive conduct and unauthorized ballot handling disproportionately affected minority voters and undermined their ability to cast informed, lawful votes, in violation of Sections 2 and 11(b) of the Voting Rights Act.

70. The disproportionate impact of these irregularities on minority voters constitutes a violation of Section 2, as the challenged practices resulted in the denial or abridgment of their right to vote in a free and fair election.

71. Additionally, the conduct of certain election officials and third-party actors—including the failure to investigate credible reports of ballot tampering and the certification of suspect results—amounts to intimidation and coercion within the meaning of Section 11(b), as it deterred voters and candidates from asserting their rights and participating fully in the electoral process.

72. Defendants Flint City Clerk, Genesee County Clerk, Genesee County Board of Canvassers, and Michigan Secretary of State Jocelyn Benson failed to investigate credible reports of absentee ballot tampering, voter deception, and unlawful ballot delivery.

73. Their failure to act, despite notice of misconduct, had the effect of abridging the voting rights of Plaintiff and similarly situated voters, particularly in minority precincts.

74. These omissions facilitated the dilution of votes and undermined the integrity of the electoral process in violation of Sections 2 and 11(b) of the Voting Rights Act.

75. Plaintiff and similarly situated voters were harmed by these violations, as their votes were diluted, disregarded, or rendered meaningless by unlawful absentee ballot practices and official indifference to electoral misconduct.

76. Plaintiff seeks declaratory and injunctive relief to prevent further violations of the Voting Rights Act, including an order voiding the August 5, 2025, election results and requiring remedial measures to ensure future compliance with federal voting protections.

**COUNT III**
**Violation of Michigan Election Law (MCL 168.764a and 168.765a)**

77. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

78. Michigan Election Law strictly regulates the handling, delivery, and return of absentee ballots to preserve the integrity of the electoral process. Specifically, MCL 168.764a prohibits any

person other than the voter, a family member, or a designated election official from possessing or delivering a completed absentee ballot. MCL 168.765a sets forth the procedures for absentee ballot applications, issuance, and return, including deadlines and chain-of-custody requirements.

79. On information and belief, numerous absentee ballots cast in the August 5, 2025, general election were unlawfully handled, collected, or submitted by individuals not authorized under MCL 168.764a. These ballots were delivered en masse to drop boxes and clerk offices in violation of the statute's clear restrictions.

80. Plaintiff has obtained credible evidence, including a witness statement, indicating that third-party actors engaged in systematic absentee ballot harvesting, including the collection of ballots from voters without proper authorization and the submission of ballots in bulk quantities inconsistent with lawful voter behavior.

81. Defendant Roytreal Johnson's conduct included making false statements to voters about the status of the election, inducing them to sign absentee ballot envelopes, and submitting ballots without proper authorization.

82. These actions were overseen, encouraged, or directed by Defendant LaShawn Johnson, who was present during many of these encounters and coordinated the unlawful absentee ballot collection and submission.

83. This coordinated misconduct violated MCL 168.764a and MCL 168.765a and materially affected the outcome of the election by enabling the submission of ballots that were unlawfully handled and completed.

84. Election officials failed to enforce the statutory safeguards required by MCL 168.765a, including verification of voter identity, proper documentation of ballot receipt, and timely rejection

of ballots submitted in violation of chain-of-custody rules. This failure enabled the inclusion of unlawfully cast ballots in the certified election results.

85. The unlawful handling and submission of absentee ballots materially affected the outcome of the election, particularly in precincts where write-in votes for Defendant Johnson surged despite her third-place finish in the primary. The volume and pattern of absentee ballots submitted in violation of Michigan law strongly suggest coordinated misconduct.

86. Defendants Flint City Clerk, Genesee County Clerk, and Genesee County Board of Canvassers Failed to Enforce the Statutory Requirements of MCL168.764a and MCL 168.765a, Including Proper Documentation, Voter Verification, And Rejection of Unlawfully Submitted Ballots.

87. Their failure to implement and adhere to these safeguards enabled the inclusion of ballots that were unlawfully handled and materially affected the outcome of the election.

88. These violations of Michigan Election Law deprived Plaintiff of a fair election and undermined public confidence in the electoral process.

89. These violations of Michigan Election Law deprived Plaintiff and other lawful voters of a fair election, diluted valid votes, and undermined public confidence in the electoral process.

90. Plaintiff seeks declaratory and injunctive relief, including an order voiding the August 5, 2025, election results, requiring a full investigation into absentee ballot handling, and mandating strict compliance with MCL 168.764a and 168.765a in future elections.

## COUNT IV
### Declaratory Judgment (28 U.S.C. § 2201)

91. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

92. An actual controversy exists between Plaintiff and Defendants regarding the legality, validity, and integrity of the August 5, 2025, general election results, particularly with respect to the handling of absentee ballots, the certification of write-in votes, and the compliance of election officials with Michigan and federal law.

93. Pursuant to MCL 600.2201 and Michigan Court Rule 2.605, Plaintiff is entitled to a declaratory judgment resolving this controversy and clarifying the legal rights and obligations of the parties. Declaratory relief is appropriate where, as here, Plaintiff faces ongoing harm and uncertainty stemming from the unlawful conduct of election officials and third-party actors.

94. Plaintiff seeks a declaration that:

(a) The August 5, 2025, election was conducted in violation of Michigan Election Law, including MCL 168.764a and 168.765a;

(b) The absentee ballot procedures employed in the election failed to comply with statutory safeguards and materially affected the outcome;

(c) The certification of Defendant Johnson as the winner of the election is invalid due to systemic irregularities and unlawful ballot handling;

(d) Plaintiff's rights under the Michigan Constitution and the Voting Rights Act were violated by the dilution of lawful votes and the failure to ensure a fair electoral process;

(e) Future elections must adhere strictly to absentee ballot handling requirements and transparency standards to prevent recurrence of the violations alleged herein.

(f) That the failure of election officials—including the Flint City Clerk, Genesee County Clerk, Genesee County Board of Canvassers, and Michigan Secretary of State—to enforce absentee ballot safeguards contributed to the unlawful conduct and invalidity of the August 5, 2025, election.

95. Declaratory relief is necessary to prevent further harm to Plaintiff and similarly situated voters, to restore public confidence in the electoral process, and to guide election officials in their statutory duties going forward.

96. Plaintiff respectfully requests that this Court enter judgment declaring the August 5, 2025, election invalid and unlawful, and issue further orders as necessary to ensure compliance with Michigan and federal election law.

**COUNT V**
**Request for Injunctive Relief (Fed. R. Civ. P. 65)**

97. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

98. Plaintiff seeks injunctive relief pursuant to the equitable powers of this Court and under Michigan Court Rule 3.310, to prevent further violations of law and to remedy the unlawful conduct that tainted the August 5, 2025, general election.

99. Plaintiff has suffered and will continue to suffer irreparable harm absent injunctive relief, including:

    a.   The dilution and nullification of lawful votes;

    b.   The loss of a fair and transparent electoral process;

    c.   The erosion of public trust in election integrity;

    d.   The denial of equal protection and voting rights under state and federal law.

100.    Plaintiff has no adequate remedy at law, as monetary damages cannot restore the integrity of the election or vindicate the constitutional and statutory rights at issue.

101.    The public interest strongly supports injunctive relief, as the integrity of elections is foundational to democratic governance. Enjoining unlawful certification and requiring remedial measures will promote transparency, accountability, and lawful administration of future elections.

102.    The balance of equities favors Plaintiff, as the requested relief seeks only to ensure lawful compliance with election procedures and prevent further harm to voters. Defendants, by

contrast, have no legitimate interest in enforcing or benefiting from an election conducted in violation of Michigan and federal law.

103.     Plaintiff respectfully requests that this Court issue preliminary and permanent injunctive relief, including but not limited to:

   a.   Enjoining the certification or enforcement of the August 5, 2025, election results;

   b.   Ordering a full investigation into absentee ballot handling, write-in vote tabulation, and election official conduct;

   c.   Mandating strict compliance with MCL 168.764a and 168.765a in all future elections;

   d.   Requiring election officials to implement enhanced safeguards, including chain-of-custody documentation, voter verification protocols, and public reporting of absentee ballot activity;

   e.   Enjoining any retaliatory or obstructive conduct by Defendants that would interfere with Plaintiff's rights or the judicial process.

104.     Plaintiff requests injunctive relief under Rule 65 of the Federal Rules of Civil Procedure to prevent certification of tainted election results and to preserve the integrity of the electoral process.

105.     Plaintiff further requests that the Court retain jurisdiction to monitor compliance with its orders and to ensure that future elections are conducted in accordance with Michigan law and constitutional standards.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and grant the following relief:

a. Declaratory Relief: A declaration that the August 5, 2025, general election was conducted in violation of Michigan Election Law, the Voting Rights Act, and Plaintiff's constitutional rights, rendering the certified results invalid and unlawful.

b. Injunctive Relief: Preliminary and permanent injunctive relief enjoining the certification, enforcement, or reliance upon the August 5, 2025, election results, and requiring:

    i. A full and independent investigation into absentee ballot handling, write-in vote tabulation, and election official conduct;

    ii. Immediate implementation of statutory safeguards under MCL 168.764a and 168.765a;

    iii. Enhanced transparency and accountability measures for future elections, including chain-of-custody documentation and public reporting protocols.

c. Election Remedy: An order voiding the August 5, 2025, election results and directing that a new, lawfully conducted election be held, or such other remedial measures as the Court deems just and proper to restore electoral integrity.

d. Monitoring and Compliance: An order retaining jurisdiction to oversee compliance with all injunctive and declaratory relief granted herein, and to ensure that future elections conform to Michigan and federal law.

e. Attorneys' Fees and Costs: An award of reasonable attorneys' fees, costs, and expenses incurred in bringing this action, pursuant to applicable law including 42 U.S.C. § 1988 and other relevant statutes.

f.  Further Relief: Such other and further relief as the Court deems just, equitable, and proper

in light of the facts and legal violations alleged.

Respectfully Submitted,

**LENTO LAW GROUP, P.C.**

s/ Lawrence A. Katz, Esquire
LAWRENCE A. KATZ
Counsel for Plaintiff
1814 East Route 70 - Suite 321
Cherry Hill, NJ 08003
Phone: 856.652.2000  EXT 497
Fax: 856.375.1010

# EXHIBIT "A"

## <u>AFFIDAVIT OF ALIONNYA BREWER</u>

State of Michigan     )
                              ) ss
County of Genesee    )

**Personal Information**

- Full Name: Alionnya Brewer
- <u>Residential Address: 2736 Milliken Ct. Flint, Michigan</u>
- Ward/Precinct: 3rd Ward

I, Alionnya Brewer, being of lawful age and sound mind, and a resident of Flint, Michigan, do hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following statements are true and correct to the best of my knowledge and belief:

## 1. <u>Voter Eligibility and Absentee Participation</u>

I am 19 years of age and left school in the 11th Grade.

I am a registered voter in the City of Flint, Michigan. I participated in the August 5, 2025, Flint City Council election by absentee ballot.

I requested and/or submitted my absentee ballot through the following method(s):

a. Personally completed and mailed my ballot in the direction of Roytreal Keith-Dequantye Johnson from the LaShaw Johnson campaign believed to be Ms. Johnson's son. (See attached **Exhibit A**) – Photo of Roytreal Keith-Dequantye Johnson.

b. Received assistance from Roytreal Keith-Dequantye Johnson in completing or submitting my application for absentee ballot and Absentee ballot.

c. My absentee ballot was handled by someone affiliated with a political campaign (Roytreal Keith-Dequantye Johnson) as indicated in statement 1(b) on or about July 22, 2025.

## 2. <u>Statement of Events</u>

a. <u>Roytreal Keith-Dequantye Johnson identified himself as</u>

me to sign an application for an absentee ballot, which I did, followed by signing the absentee ballot envelope. I understood that I was completing an absentee ballot, but I was misled about the process and Mr. Johnson's intentions. He did not inform me that his actions were unlawful. Instead, he told me that LaShawn Johnson was the only candidate I could vote for and directed me to write her name in the space he pointed to on the ballot. After I completed the ballot as instructed, he took it from me.

b. After I signed, Roytreal Keith-Dequantye Johnson:

- Instructed me on what to write on the absentee ballot. He falsely indicated that there were no other candidates or choices available, thereby misleading me into believing that LaShawn Johnson was the only option.

- Mailed or submitted my completed absentee ballot in violation of Michigan Election Law, specifically MCL 168.764a and MCL 168.765a, which restrict the return of absentee ballots to the voter, a family or household member, a mail carrier, or an election official.

The individual who submitted my ballot was not authorized under Michigan law to handle or return absentee ballots. I personally completed the ballot by writing in the name of LaShawn Johnson, but I did so under the direct instruction of Roytreal Keith-Dequantye Johnson, who represented himself as an agent of LaShawn Johnson's campaign. I was not given the opportunity to make an informed decision regarding the available candidates or choices.

3. Impact on My Absentee Ballot

I believe my absentee ballot was compromised. Based on information I have since learned from community discussions and news reports, I now understand that I may have been a victim of illegal ballot harvesting. I am deeply concerned that my voting rights were violated, and that the integrity of the absentee ballot process was undermined. I respectfully request that this affidavit be considered in any investigation—criminal, civil, or administrative—regarding absentee ballot irregularities in the August 5, 2025, Flint City Council election.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___ day of _____ 2025.

**Signature:** _____

**Printed Name:** Alionnya Brewer

Subscribed and sworn to before me on this ___ day of

_____ , 2025.

Notary Public: _Melody Wagner_

My Commission Expires: _4-18-28_

*Affidavit of Absentee Voter – Flint Michigan City Council Election – August 5, 2025*

MELODY WAGNER
Notary Public, State of Michigan
County of Genesee
Commission Expires Apr. 18, 2028
Acting in the County of _____