UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY BIGGS-LEAVY,

Plaintiff,

v.

Case No. 25-cv-12567
Honorable Linda V. Parker

LASHAWN JOHNSON, ROYTREAL JOHNSON, GENESEE COUNTY BOARD OF CANVASSERS, FLINT CITY CLERK, CITY OF FLINT, MICHIGAN SECRETARY OF STATE JOCELYN BENSON, and JOHN DOES 1-10.

Defendants.
_______________________________/

**OPINION AND ORDER (1) GRANTING MOTIONS TO DISMISS (ECF NOS. 29 & 30); (2) SUA SPONTE DISMISSING PLAINTIFF'S CLAIMS AGAINST THE REMAINING DEFENDANTS; (3) DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 13); AND (4) DENYING AS MOOT MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL (ECF NO. 19)**

This lawsuit arises from alleged misconduct during a special election to fill an empty seat on the Flint City Council. (ECF No. 1 at PageID.2.) Plaintiff Beverly Biggs-Leavy was a certified candidate in that election. Defendants include one of Plaintiff's opponents, Lashawn Johnson ("Johnson"), and Johnson's son, Roytreal Johnson ("Roytreal").[1] Plaintiff also sues the Flint City Clerk, the

---

[1] The Court refers to Lashawn Johnson by her last name and to Roytreal Johnson (Cont'd . . .)

City of Flint, the Genesee County Board of Canvassers, the Genesee County Clerk, and Michigan Secretary of State Jocelyn Benson ("Secretary Benson") in their official capacities. Plaintiff's Complaint includes the following five "counts":

> (I) A violation of the Equal Protection Clause of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983, based on the alleged dilution of votes and the denial of equal protection of the laws;
>
> (II) A violation of Sections 2 and 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b);
>
> (III) Violations of Michigan election law;
>
> (IV) A request for a declaratory judgment affirming that the August 5, 2025 election was conducted illegally, that the outcome was affected by misconduct, and that Johnson's certification is invalid; and
>
> (V) A request for injunctive relief voiding the election results, requiring an investigation into election officials' conduct, and mandating future compliance with Michigan's state laws.

(*See, generally* ECF No. 1.)

The matter is before the Court on Plaintiff's motion for preliminary injunction (ECF No. 13), a motion to disqualify Plaintiff's counsel (ECF No. 19), and two motions to dismiss under Federal Rules of Procedure 12(b)(1) and 12(b)(6). One motion to dismiss comes from Secretary Benson. (ECF No. 29.)

---

by his first name given that they share a last name. The Court intends no disrespect to Roytreal by doing so.

The other was filed by Johnson, the Flint City Clerk, and the City of Flint. (ECF No. 30.) The Genesee County Board of Canvassers and Genesee County Clerk filed a notice of joinder in the motions. (ECF No. 36.) For the reasons set forth below, the Court is granting Defendants' motions. The Court is, therefore, denying Plaintiff's motion for a preliminary injunction and denying as moot the motion to disqualify her counsel.

## I. Standards of Review

Defendants' motions are filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction. When that motion is "not a challenge to the sufficiency of the pleading's allegation, but … to the factual existence of subject matter jurisdiction," it makes a "factual attack." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). "When a factual attack … raises a factual controversy, the district court must weigh the conflicting evidence to [determine whether] subject-matter does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "[W]hen a defendant produces evidence challenging the factual existence of [subject matter jurisdiction], a plaintiff must generally prove [subject matter jurisdiction] with evidence, even at the motion-to-dismiss stage." *Harris v.*

*Lexington-Fayette Urban Cnty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (citing *Taylor v. KeyCorp.*, 680 F.3d 609, 613 (6th Cir. 2012); *Superior MRI Servs., Inc. v. All Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)).

A Rule 12(b)(6) motion, in contrast, tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Twombly*, 550 U.S. at 555.

When a defendant moves to dismiss under Rules 12(b)(1) *and* (6), the court "[is] bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge

becomes moot if th[e] court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

## II. Factual and Procedural Background

On August 5, 2025, a special election was held to fill a vacant seat on the Flint City Council. (ECF No. 1 at PageID.5.) The vacancy stemmed from the death of former Councilman Quincy Murphy, who held the 3rd Ward's City Council seat. (ECF No. 30 at PageID.690.)

Before the election, a primary was held to determine who would appear on the general election ballot. In the primary, held on May 6, 2025, Plaintiff tied for first place with 165 votes, qualifying as a certified candidate on the general election ballot. (ECF. No. 1 at PageID.5.) Meanwhile, Johnson placed third with 162 votes, falling just three votes short of the front runners. (*Id.*) This resulted in Johnson failing to qualify for the general election ballot. (*Id.*)

Johnson, however, ran as a write-in candidate and beat Plaintiff by 96 votes. (ECF No. 30 at PageID.690.) According to Plaintiff, "the result of [Johnson's] triumph . . . via a write-in campaign strongly suggest[s] coordinated misconduct" that materially affected the electoral outcome. (*Id.* at PageID.693-94.) According to Plaintiff, the alleged perpetrators of this misconduct include affiliates of Johnson's campaign and several state and local election officials.

Specifically, Plaintiff alleges that Roytreal "personally visited multiple absentee voters in the 3rd Ward and falsely informed them that [Johnson] was the only candidate running in the . . . general election." (ECF No. 1 at PageID.5.) According to Plaintiff's Complaint, Roytreal made these misrepresentations "in an effort to induce voters to sign absentee ballot envelopes" so that he himself or affiliates could "complete and submit ballots on their behalf." (*Id.*) Plaintiff claims Johnson "was physically present during many of these encounters, often waiting in a nearby vehicle while [Roytreal] approached voters' homes." (*Id*. at PageID.6.) Plaintiff alleges that Johnson and Roytreal thereby "misled [voters] about the status of the election and deprived [them] of accurate information necessary to make informed choices." (*Id.*)

To support these allegations, Plaintiff relies on the affidavit of Alionnya Brewer, an absentee voter. (*See generally*, ECF No. 1 at PageID.21-23.) In her affidavit, Brewer recounts being visited by Roytreal, who helped her obtain and cast her absentee ballot. (*Id.* at PageID.21-22.) Notwithstanding the fact that the certified candidates of the general election were listed on the ballot, Brewer claims that Roytreal misled her by stating that Johnson was the only candidate Brewer could vote for. (*Id.*)

Plaintiff claims Brewer's affidavit shows that Johnson or affiliates of her campaign "[v]isited voters at their homes, [h]ad voters sign absentee ballot

envelopes, [c]ompleted the ballots themselves, and [m]ailed or submitted the ballots in violation of Michigan Election Law." (ECF No. 1 at PageID.7.) But it should be emphasized that Brewer herself states she "[p]ersonally completed the ballot by writing in the name of Lashawn Johnson . . . under the direct instruction of [Roytreal] of Lashawn Johnson's campaign." (*Id.* at PageID.22.)

Still, the core of Plaintiff's Complaint is that "[n]umerous absentee ballots . . . were unlawfully handled, collected, or submitted by individuals not authorized under [Michigan's Election Laws]" before being "delivered en masse to drop boxes and clerk offices" despite clear statutory restrictions governing absentee ballot possession, delivery, and chain of custody. (ECF No. 1 at PageID.6, 13.) For the alleged failure to enforce these statutory safeguards, Plaintiff names the City of Flint, the Flint City Clerk, the Genesee County Board of Canvassers, the Genesee County Clerk, and Secretary Benson as defendants. (*Id.* at PageID.6, 10.) Plaintiff claims their omissions permitted unlawfully handled absentee ballots to be counted and included in the election results. (*Id.* at PageID.6.) Plaintiff alleges these defendants thereby contributed to "abridging . . . [voting rights], particularly in minority precincts," because the Johnson campaign's illegal conduct occurred in "predominantly Black neighborhoods." (*Id*. at PageID.11; ECF No. 33 at PageID.787.)

The unofficial election results were announced on August 6, 2025, one day after the election. (ECF No. 30 at PageID.698.) The Genesee County Board of Canvassers certified the results on August 13, 2025. (ECF No. 24-3 at PageID.596.) Plaintiff filed this action on August 19, 2025, seeking declaratory and injunctive relief. Before commencing this action, Plaintiff did not avail herself of any established state law remedies for her grievances even though a winner was announced, and the election certified. (*See* ECF No. 30 at PageID.699-700.)

Plaintiff filed a motion for preliminary injunction on September 10, 2025. (ECF No. 13.) The Flint City Clerk, the City of Flint, and Johnson have moved to disqualify Plaintiff's counsel. (ECF No. 19.)

## III. Applicable Law and Analysis

Secretary Benson, the City of Flint, the Flint City Clerk, and Johnson move to dismiss Plaintiff's claims under Rule 12(b)(1), claiming Plaintiff lacks standing and that her claims are moot. Secretary Benson also claims Eleventh Amendment immunity. The Court finds that Plaintiff lacks standing to bring her claims and that they are moot. But first, it considers whether Secretary Benson is protected by Eleventh Amendment Immunity.

### A. Secretary Benson's Eleventh Amendment Immunity

The Eleventh Amendment generally bars citizens from suing unconsenting States in federal court. U.S. Const. Amend. XI; *League of Women Voters of Ohio*

*v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008). "[A] suit against an individual in [his or her] official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). Therefore, the Eleventh Amendment provides state officials considerable immunity for official acts when the State is the real party in interest; otherwise, plaintiffs could evade sovereign immunity by simply changing the caption of their suit.

But Eleventh Amendment immunity is subject to three exceptions: "(1) congressional abrogation; (2) waiver by the State; and (3) a suit against a state official seeking prospective relief to end a continuing violation of federal law." *King v. Whitmer*, 505 F. Supp. 3d. 720, 728 (E.D. Mich. 2020) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002)) (internal quotation marks omitted). Congress did not abrogate States' sovereign immunity when it enacted 42 U.S.C. § 1983, *Will*, 491 U.S. at 66, and Michigan has not consented to being sued in civil rights actions in the federal courts, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004) (citation omitted). Therefore, Plaintiff's claims are barred against Secretary Benson unless the third exception applies.

The third exception to Eleventh Amendment immunity arises from the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908). *See King*, 505 F. Supp. 3d at 728. But the Supreme Court has emphasized that "interpret[ing]

*Young* to permit [federal action] in every case where prospective declaratory and injunctive relief is sought would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment Immunity represents a real limitation on a federal court's federal-question jurisdiction." *Idaho v. Coer d'Alene Tribe of Idaho*, 521 U.S. 261. 270 (1997).

To determine whether *Ex parte Young* applies, a court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (quoting *Coeur d'Alene Tribe*, 521 U.S. at 296 (O'Connor, J., concurring)).

In *King*, this Court considered whether *Ex parte Young* applied to a request for relief almost exactly the same as the request before it now. As in *King*, Plaintiff asks the Court to invalidate certified election results based on alleged misconduct; she seeks declaratory relief finding that an election was conducted unlawfully and injunctive relief preventing the challenged results from being enforced; she asks the court to direct state officials to conform their conduct to state law; and where the *King* plaintiffs sought inspections of voting machines, Plaintiff here wants the Court to order investigations into state election officials' conduct. (ECF No. 1 at PageID.18.); *King*, 505 F. Supp. 3d. at 730.

In *King*, this Court held that the *Ex parte Young* exception did not apply. *Id.* at 729. It determined that, although nominally styled as prospective, the aforementioned remedies do not "seek[] to enjoin the continuing enforcement of a statute that is allegedly unconstitutional," but rather "to undo what has already occurred." *Id.* Because the Court identified "no continuing violation [of federal law] to enjoin," it concluded that Eleventh Amendment immunity barred the plaintiffs' suit. *Id.*

Here, Secretary Benson argues that "it is far from clear whether Plaintiff's requested . . . relief [is] actually prospective . . . as opposed to retroactive." (ECF No. 29 at PageID.659.) The Court agrees. Nowhere in Plaintiff's pleadings does she allege that the continuing enforcement of Michigan's statutory scheme is the source of an injury. Instead, the problematic motive from *King*—to "undo what has already occurred"—belies Plaintiff's request for relief here. Secretary Benson is not responsible for any continuing violations of federal law which this Court could enjoin. *See King Lincoln Bronzeville Neighborhood Ass'n v. Husted*, No. 2:06-cv-00745, 2012 WL 395030, at *5 (S.D. Ohio Feb. 7, 2012).

Because Plaintiff's requested relief is not properly characterized as prospective, her claims against Secretary Benson are barred by the Eleventh Amendment and must be dismissed. Plaintiff's state law claim (Count III) must be dismissed for the additional reason that *Ex parte Young* does not extend to claims

alleging that state officials have violated *state law*, even if prospective relief is sought by the plaintiff. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (stating that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

**B. Defects of Standing & Mootness**

Secretary Benson also moves to dismiss Plaintiff's claims based on mootness and lack of standing. (ECF No. 29 at PageID.641.) Johnson, the City of Flint, and the Flint City Clerk do the same. (ECF No. 30 at PageID.678.) The motions both articulate similar reasons as to why standing, and therefore this Court's jurisdiction, are lacking in this case.

To establish standing under Article III, plaintiffs must show (1) that they suffered a "concrete and particularized" injury which is "actual or imminent," (2) a "causal connection between the injury and the conduct complained of," and (3) that redressability would be "likely" if they prevail at trial. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Id.* at 561. Redressability also factors into mootness to the extent that "a case [becomes] moot where the court lacks the ability to give meaningful relief." *King*, 505 F. Supp. 3d. at 730 (citing *Sullivan*, 920 F.3d at 407) (internal quotation marks omitted).

In addition to these constitutional requirements, there are prudential rules of standing. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975). These "judicially self-imposed limits on the exercise of federal jurisdiction" include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citation omitted). As to the last, federal courts must ask whether "the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500.

**1. Plaintiff's Federal Claims**

Plaintiff alleges that Defendants violated the Fourteenth Amendment's Equal Protection Clause and the Voting Rights Act based on conduct that resulted in vote dilution. The Equal Protection Clause provides that "[n]o State shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The 'central purpose' of this clause 'is to prevent the States from purposefully discriminating between individuals on the basis of race.'" *Jackson v. Benson*, No. 24-2006, 2025 WL 2918651, at *2 (6th Cir. June 27, 2025) (quoting *Shaw v. Reno*, 509 U.S. 630, 642 (1993)). "The essence of the equal protection

claim recognized in *Shaw* is that the State has used race as a basis for separating voters into districts." *Id.* (quoting *Miller v. Johnson*, 515 U.S. 900, 911 (1995)) (brackets omitted).

"Section 2 of the Voting Rights Act prohibits a State or political subdivision from applying a voting "standard, practice, or procedure . . . in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301. "The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Jackson*, 2025 WL 2918651, at *2 (quoting *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986)). A § 2 vote-dilution claim requires proof that "a challenged practice impermissibly diluted minorities' voting strength,' which requires 'a point of comparison[.]'" *Id*. (first quoting *Ohio State Conf. of NAACP v. Husted*, 768 F.3d 524, 556 (6th Cir. 2014), then quoting *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020)).

Plaintiff does not allege that any vote was diluted based on the voter's race, much less that *her* vote was diluted based on her race. The closest Plaintiff comes to bringing race into the equation are the following vague allegations in her Complaint:

> 66. On information and belief, voters were subject to undue influence, misinformation, or coercion regarding

> the submission of absentee ballots, particularly in precincts with high concentrations of minority voters.
>
> 69. The deceptive conduct and unauthorized ballot handling disproportionately affected minority voters and undermined their ability to cast informed, lawful votes, in violation of Sections 2 and 11(b) of the Voting Rights Act.
>
> 70. The disproportionate impact of these irregularities on minority voters constitutes a violation of Section 2, as the challenged practices resulted in the denial or abridgment of their right to vote in a free and fair election.

(ECF No. 1 at PageID.11.) Even if these allegations were sufficient to plausibly state a claim, Plaintiff never alleges that her vote was diluted. She asserts a "generalized grievance" which is insufficient to establish standing. *See Gill v. Whitford*, 585 U.S. 48, 49 (2018) (explaining that in a vote-dilution claim, the first element of standing requires plaintiffs to show "disadvantage to themselves as individuals"); *Jackson*, 2025 WL 2918651 (citing *Wood*, 981 F.3d at 1314-15); *Mirarchi v. Boockvar*, No. 21-126, 2021 WL 6197370, at *2 (E.D. Pa. Dec. 30, 2021).

Here, as a voter, Plaintiff fails to show that she suffered an individualized injury under the Fourteenth Amendment or Section 2 of the Voting Rights Act. While Plaintiff generally asserts that Defendants' conduct resulted in dilution, she does not plead any factual allegations to show that *she* and "similarly situated voters" suffered a unique disadvantage. At most, Plaintiff alleges that she suffered

the *same* incremental dilution of her vote as everyone else. Therefore, Plaintiff fails to raise anything more than a generalized grievance about the administration of the August 5, 2025 special election.

As a voter, Plaintiff further fails to demonstrate an injury under Section 11(b) of the Voting Rights Act, which prohibits intimidation, threats, or coercion directed at voters or those aiding others in voting. 52 U.S.C. § 10307(b) (2023). As with her other claims, Plaintiff asserts a violation of the Voting Rights Act unaccompanied by factual allegations that *she*, as opposed to third-parties not before this Court, was intimidated or coerced within the meaning of Section 11(b).

Plaintiff lacks standing in her capacity as a candidate, too. The Voting Rights Act confers standing upon only the United States Attorney General and an "aggrieved person." 52 U.S.C. § 10302. The latter "is confined to persons whose *voting rights* have been denied or impaired." *McGee v. City of Warrensville Heights*, 16 F. Supp. 2d 837, 845-46 (N.D. Ohio 1998) (citing *Roberts v. Wamer*, 883 F.2d 617, 621 (8th Cir. 1989)) (emphasis added). "An unsuccessful candidate attempting to challenge election results does not having standing to sue under the Voting Rights Act."[2] *Id.* at 845; *see also White-Battle v. Democratic Party of Va.*,

---

[2] Notably, as it relates to her Equal Protection claim, the right to assume public office is not a fundamental right. *See Fouts v. Warren City Council*, 97 F.4th 459, 466 (6th Cir. 2024) (citations omitted). Nor does Plaintiff allege that she was denied the City Council seat based on her race or some other protected status. (Cont'd . . .)

323 F. Supp. 2d 696, 702 (E.D. Va. 2004) ("It is well-settled that unsuccessful candidates lack standing to sue under the Voting Rights Act of 1965."), *aff'd* 134 F. App'x 641 (4th Cir. 2005); *Towers v. Unified Gov't of Wyandotte Cnty.*, No. 21-4089, 2022 WL 21778528, at *3 (D. Kan. Mar. 9, 2022), *report & recommendation adopted* 2022 WL 21778525 (D. Kan. Apr. 7, 2022); *Ohio v. Philadelphia Cnty. Bd. of Elections*, No. CIV.A.08-0081, 2008 WL 4787583, at *7 (E.D. Pa. Oct. 31, 2008) (dismissing unsuccessful candidate's Voting Rights Act lawsuit for lack of standing). The Eighth Circuit reasoned that candidates "are not harmed by the loss of the right to vote, 'but rather the loss of the votes that they claim would have been received.'" *Ark. State Conference NAACP v. Arkansas Bd. of Apportionment*, 86 F.4th 1204, 1216-17 (2023) (quoting *Roberts*, 883 F.2d at 621) (brackets and ellipsis removed).

Plaintiff cannot plausibly establish redressability either. Once an election has been certified, challengers face serious Article III hurdles regarding the redressability of their alleged injury. *See e.g. King v. Whitmer*, 505 F. Supp. 3d. at 730 (finding a 2020 election recount lawsuit moot under Article III because the Michigan Board of State Canvassers had already certified the election and the governor had submitted the slate of electors to the archivist of the United States);

---

Thus, it is unclear what legally protected interest Plaintiff claims was injured in her capacity as a candidate.

*Mirarchi*, 2021 WL 6197370, at *3 (finding no redressable injury once the election is certified and final). Further, Plaintiff's request to void the election results is not appropriate where she, like in *King*, "slept on [her] rights" until state level remedies were no longer available to her. *See King*, 505 F. Supp. 3d at 731-32 (collecting cases finding "[t]he doctrine of laches . . . at its peak" once election "ballots are cast, votes are counted, and the results are certified").

For the foregoing reasons, this Court agrees with Defendants that Plaintiff has failed to establish standing for her federal claims, and that they are moot. She does not demonstrate a concrete and particularized injury as a voter, and her requested relief as a candidate is beyond the powers of this court. Thus, Plaintiff's federal claims (Counts I & II) against Defendants must be dismissed.

**2. Plaintiff's State Law Claims**

This Court's jurisdiction over Plaintiff's state-law claims is premised on supplemental jurisdiction, 28 U.S.C. § 1367. Pursuant to the statute, a federal district court may decline to exercise supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other

compelling reasons for declining jurisdiction.

*Id*. § 1367(c). Despite the discretion bestowed on the district courts, the Sixth Circuit instructs that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]" *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)). However, "when federal claims are dismissed under Federal Rule of Civil Procedure 12(b)(1), 'supplemental jurisdiction can *never* exist' because a Rule 12(b)(1) dismissal indicates 'that there never was a federal claim.'" *Id*. (quoting *Musson*, 89 F.3d at 1255).

Having found that Plaintiff lacks standing to assert her federal claims and that those claims are moot, the Court likewise dismisses, albeit without prejudice, her state law claims. Even if subject matter jurisdiction was not lacking, the Court would decline to exercise supplemental jurisdiction, as "[i]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106.

### 3. "Claims" for Equitable and Declaratory Relief

"Injunctive relief is not a cause of action, it is a remedy." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021) (quoting *Thompson v. JPMorgan*

*Chase Bank*, *N.A.*, 563 F. App'x 440, 442 n.1 (6th Cir. 2014)). Similarly, "[t]he availability of declaratory relief . . . presupposes 'the existence of a judicially remediable right.'" *Livingston v. Jay Livingston Music, Inc.*, 142 F.4th 433, 444 (6th Cir. 2025) (Readler, J., concurring) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). Because Plaintiff does not have standing for any of her alleged constitutional deprivations, she is not entitled to injunctive relief on those claims. And because the Court has dispensed with all of Plaintiff's substantive issues, "a declaratory judgment would no longer serve a useful purpose in clarifying the legal relations at issue" and is unwarranted. *Id.* Consequently, Plaintiff's "claims" for injunctive and declaratory relief (Counts IV & V) are dismissed as well.

**C. Laches**

The Court notes that Secretary Benson also argues laches as an additional reason to grant her motion. (ECF. No. 29, PageID.658). The Court addresses this issue only briefly, given the defects in Plaintiff's claims already outlined above.

Claims are barred by laches if: "(1) the plaintiff delayed unreasonably in asserting [her] rights and (2) the defendant is prejudiced by this delay." *King*, 505 F. Supp. 3d. at 731 (quoting *Brown-Graves Co*. *v*. *Central States*, *Se*. *and Sw*. *Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000)). Here, Plaintiff's delay in suing six days after certification and weeks after the announcement of unofficial results was unreasonable. That delay prejudiced Secretary Benson because she can

no longer mitigate the allegedly dilutive conduct, now that the election is complete. For the foregoing reasons the Court agrees that Plaintiff's claims against Secretary Benson are also barred by laches.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS** the motions to dismiss filed by Secretary Benson (ECF No. 29) and Johnson, the Flint City Clerk, and the City of Flint (ECF No. 30), which are joined by the Genesee County Board of Canvassers and Genesee County Clerk. The Court sua sponte dismisses Plaintiff's claims against Roytreal. As Plaintiff cannot succeed on her claims, here, her motion for a preliminary injunction (ECF No. 13) is **DENIED**. The motion to disqualify Plaintiff's counsel (ECF No. 19) is **DENIED AS MOOT**.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 27, 2026